UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FRANK B. IACOVANGELO, Public Administrator,
Monroe County, as Administrator of the Estate of
MARIA VIERA,

                                        Plaintiff

                                                                 DECISION AND ORDER

-vs-

                                                                 13-CV-6466  CJS
CORRECTIONAL MEDICAL CARE, et al.,


                                        Defendants

_____


        On October 2, 2014, the Court issued a Decision and Order (Docket No. [#32]),

dismissing this action with prejudice, for failure to state a claim.  On October 31, 2014,

Plaintiff filed a motion for reconsideration [#34], based on "recently discovered evidence."

The application is denied.

BACKGROUND

        The reader is presumed to be familiar with the prior Decision and Order [#32], which

set forth the facts of this action in detail.  In short, the decedent, Maria Viera ("Viera"), was

arrested and placed in the custody of the Monroe County Jail in Rochester, New York,

where she died thirty-six hours later of a heart condition, Myocarditis.  Plaintiff alleged that

Defendants violated Viera's federal constitutional rights by acting with deliberate

indifference to her serious medical needs.  Specifically, Plaintiff maintained that Viera, who

used heroin, cocaine and alcohol, died because Defendants failed to provide her with drug

detoxification monitoring.

Plaintiff sued the County of Monroe and the private corporation with which the county had contracted to provide medical care at the county jail, Correctional Medical Care, Incorporated ("CMC").  Plaintiff also sued ten individual defendants, including the Sheriff of Monroe County, various staff of the Monroe County Jail and employees of CMC. However, the Court granted Defendants' motion to dismiss under Fed.R.Civ. P. 12(b)(6), finding that the pleading failed to plausibly allege that any defendant had acted with deliberate indifference toward Viera's serious medical needs.  As to that point, the Court found, first, that the pleading failed to allege that any defendant was aware that Viera had a serious medical condition.  The Court further found that, even assuming Viera had a serious medical condition, there was no plausible allegation that any defendant acted with the required deliberate indifference toward her.

The Amended Complaint attempted to allege that CMC had "a policy to provide inadequate medical care to prisoners, in order to save money." *Iacovangelo v. Correctional Medical Care, Inc.*, 2014 WL 4955366 at *14.  However, the Court found that the pleading did not state a supervisory or *Monell* claim against CMC, since it did not state any underlying constitutional violation against any CMC employee.  The Court also found that, even assuming *arguendo* that the pleading plausibly alleged an underlying constitutional violation by one of CMC's employees, which it did not, the pleading failed to plausibly allege that CMC had a policy or practice to act with deliberate indifference toward inmates' health:

> In this action, the pleading does not allege the existence of a formal policy, but contends that an informal policy or practice can be inferred from the fact that other inmates have suffered harm due to particular instances of inadequate medical care. More specifically, the pleading indicates that CMC has, for years, provided contract medical care at jails in counties "across New York," including Albany, Broome, Rensselaer, Schenectady, Tioga and

2

Ulster. According to the hearsay newspaper article attached to the Amended Complaint as Exhibit C, between 2009 and 2011 there were a total of nine inmate deaths at jails where CMC provided medical care.  Using brief quotes taken out of context, the newspaper article suggests that CMC provided sub-standard care in all nine instances where inmates died.  Of the nine deaths, five were suicides, three involved medical issues including cardiac arrythmia and diabetes/pneumonia, and one cause of death was "undetermined."  Viera's death is included in the nine, and the cause of death is listed as myocarditis, suggesting that CMC failed to treat her for that condition, but as already discussed there is no indication in the pleading that any CMC staff member knew that Viera suffered from myocarditis. Notably, although CMC reportedly provides medical services at thirteen jails across New York State, the nine deaths occurred at just six of those jails: Ulster County (2), Monroe County (2), Dutchess County (2), Schenectady County (1), Broome County (1) and Tioga County (1).

The Court finds that given the very large number of inmates that CMC employees must have treated over the years on a continuous basis, nine unrelated deaths, five of which were by suicide and one of which was due to an undetermined cause, over the course of several years does not plausibly suggest the existence of a policy of providing sub-standard care in order to save money, such as is alleged here. *See, Tanzi v. Town of Marlborough*, 2014 WL 2815777 at *8 (N.D.N.Y. Jun.23, 2014) (Holding that a small number of isolated incidents does not plausibly suggest a municipal custom or policy) (collecting cases); *McNulty v. Yaneka*, No. 11–CV–08320 (ER), 2013 WL 684448 at *9 (S.D.N.Y. Feb.25, 2013) ("Plaintiff's speculative and conclusory allegations of an unlawful custom or practice are insufficient to support a claim of municipal liability against CMC. Plaintiff's theory that CMC has a policy of making medical decisions based on cost is based on mere conjecture.").

Apart from failing to plausibly allege the existence of such a policy, the pleading also fails to plausibly allege that any conduct by CMC in this action was motivated by a desire to cut costs. In that regard, Plaintiff essentially alleges that since CMS is a for-profit corporation, it is plausible to think that it intentionally endangered inmates' health to cut costs in any instance in which an inmate received sub-standard care, even though one could offer

3

the same speculation about any for-profit medical provider. Consequently, the Court finds that the claims against CMC, Umar and Biuso must be dismissed.

*Id*., 2014 WL 4955366 at *15-16 (footnotes omitted).   On October 3, 2014, the Court entered judgment dismissing the action.

On October 31, 2014, Plaintiff filed the subject motion for reconsideration [#34] of the judgment in this action, pursuant to Rules 59(e) and 60(b)(2).  Plaintiff's motion is based on the fact that on or about September 22, 2014, approximately one week before the Court issued its Decision and Order dismissing the action, the State of New York and CMC entered into a settlement agreement, in which CMC purportedly "made a number of factual admissions relevant to this case, was forced to make a number of changes to its practices, and further was required to pay a large civil penalty to the State of New York." Keach Aff. [#34-1] at ¶ 3.  The Court had no notice of the settlement agreement until approximately one month after it issued its Decision and Order, when Plaintiff filed the motion for reconsideration.

The actual settlement agreement pertained to CMC's work in two New York counties, Tioga and Monroe, and included the following findings by the New York State Attorney General:  1) Viera's death resulted from "egregious lapses in medical care," which characterization was based on the same report[1] that was attached to Plaintiff's Amended Complaint [#9] and which the Court discussed in its Decision and Order; and 2) at facilities in which CMC provided medical care to inmates, there were "serious deficiencies and illegalities including, but not limited to . . . unlicensed and inexperienced staff[,] inadequate staffing, lack of adequate medical oversight[,] and failure to adhere to medical and

---

[1]*See*, Docket No. [#34-3] at p. 3, n. 6.

administrative protocols and procedures."[2]  CMC did not admit that the above findings were accurate, although it did admit to certain other findings, and declined to either admit or deny other allegations.[3]  In any event, as part of the agreement, CMC agreed to restructure its business operations and contracts, to conduct its business in accordance with appropriate laws and standards, to hire an independent monitor, to undergo audits, to pay $100,000.00 in restitution to Tioga County, and to pay a $100,000.00 penalty to the Attorney General.  The settlement agreement indicates, though, that it "is not intended for use by any third party in any other proceeding and is not intended, and should not be construed, as an admission of liability by CMC."[4]

Nevertheless, Plaintiff maintains that the settlement agreement provides evidence, previously lacking, that CMC had a policy of providing sub-standard care in order to save money, which led to Viera's death.  Plaintiff consequently requests that the Court vacate its judgment and allow Plaintiff to file a Second Amended Complaint.

Defendants oppose the application, which they interpret as seeking only to allow the case to be reopened as against CMC and its President, Emre Umar, but not the other defendants.  Defendants contend that the motion should be denied because the alleged new information was available to Plaintiff before the Court issued its Decision and Order, and because the information is merely duplicative of the report that was attached to the Amended Complaint.

---

[2]Docket No. [#34-3] at ¶ 11.

[3]The two referenced findings were taken from paragraphs 7 and 11, to which CMC did not admit. *See*, Docket No. [#34-3] at ¶ 57 (indicating which findings CMC admitted to and which it did not).

[4]Docket No. [#34-3] at ¶ 74.

DISCUSSION

Plaintiff brings the instant motion under Rules 59(e) and 60(b)(2).  With regard to the first of these rules,

> [w]hile there are no formal guidelines, courts have recognized four basic grounds on which a judgment may be altered or amended pursuant to Rule 59(e): the need to prevent manifest injustice, the need to correct errors of law or fact, the availability of new evidence, or an intervening change in controlling law.  Reconsideration of a court's prior order is an extraordinary remedy to be employed sparingly in the interest of finality.  In a motion for reconsideration, a party may not advance new facts, issues or arguments not previously presented to the Court.

*Maksymowicz v. Weisman & Calderon, LLP*, No. 14 Civ. 1125(JGK), 2014 WL 1760319 at *1 (S.D.N.Y. Feb. 2, 2014) (citations and internal quotation marks omitted).  Plaintiff's motion is alternatively based on Rule 60(b)(2), which states, in pertinent part:

> **Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

Fed.R.Civ.P. 60(b)(2) (West 2015).  Under either rule, Plaintiff's motion is based on new evidence, namely, the settlement agreement between CMC and the New York State Attorney General.  Motions under either Rule 59(e) or 60(b)(2) must be filed within 28 days after judgment, and Plaintiff's motion was filed on the 28th day and is therefore timely.

However, the Court finds that the motion lacks merit.  In the first place, the motion lacks merit under Rule 59(e) since Plaintiff was aware of the settlement agreement prior to entry of judgment, but did not bring it to the Court's attention. *See, Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486, 128 S.Ct. 2605, 2617, n. 5 (2008) (Rule 59(e) cannot be used

to present evidence that could have been raised prior to entry of judgment). On this point, Plaintiff, commendably, acknowledges that he was already aware of the settlement agreement between the Attorney General and CMC when the Court issued its Decision and Order: "Plaintiff was *in the process* of bringing this settlement agreement to the Court's attention when the Court decided the Defendants' motion to dismiss." Docket No. [#34-1] at ¶ 5 (emphasis added).[5] However, the usual "process" of bringing matters to the Court's attention is to either file a document, make a phone call, send an email, or mail a letter, none of which was done here until more than a month after the settlement.

The same reasoning holds true for the application under Rule 60(b)(2). *See, e.g., Sea Trade Co. Ltd. v. FleetBoston Financial Corp.*, No. 03 Civ. 10254(JFK), 2009 WL 4667102 at *7 (S.D.N.Y. Dec. 9, 2009) ("Evidence which was in the possession of a party prior to judgment does not constitute 'newly discovered evidence' for the purposes of Rule 60(b)(2).") (citations omitted).

Apart from all of that, the settlement agreement between the Attorney General and CMC does not alter the fact that the Amended Complaint failed to plausibly allege an underlying constitutional violation by one of CMC's employees, without which CMC cannot be held liable. Neither does the Court agree that the settlement agreement plausibly establishes an unconstitutional policy or custom by CMC.

---

[5]Although that statement does not unequivocally indicate that Plaintiff was aware of the settlement before the Court issued its ruling, the Court is confident that he did, since it appears that on September 25, 2014, a week before the Court issued its ruling, Plaintiff's counsel was quoted, in a news article about the settlement, as stating that the Attorney General's action against CMC was "long overdue." *See*, Pressconnects, Press & Sun-Bulletin, A Gannett Company, "AG: Jail medical care provider  provider to pay $200K," September 25, 2014.

http://www.pressconnects.com/story/news/local/2014/09/25/new-york-jail-medical-care-agreement/16204235/

7

CONCLUSION

Plaintiff's motion for reconsideration [#34] is denied.

SO ORDERED.

Dated:      Rochester, New York
            January 22, 2015

                                        ENTER:


                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge